IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20935
Summary Calendar
_____

In the Matter of:  TRANSAMERICAN NATURAL GAS CORPORATION,

                                             Debtor.
--------------------------------------

TRANSAMERICAN NATURAL GAS CORPORATION
formerly known as GHR Energy Corporation,

                                             Appellant,

versus

U.S. CUSTOMS SERVICE,

                                             Appellee.
_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-92-2509)
_____
April 18, 1996

Before SMITH, BENAVIDES and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge[*]:

     Appellant  TransAmerican  Natural  Gas  Corporation
("TransAmerican") appeals the district court's affirmance of the
bankruptcy court's final order granting Appellee U.S. Customs
Service's ("Customs") motion for reconsideration and second motion
and request for payment of reliquidated claims for duties arising
from TransAmerican's importation of four shipments of atmospheric

_____

     [*]  Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

residual fuel oil prior to filing for Chapter 11 bankruptcy in 1983. Finding that the reliquidated claims arose post-petition and therefore qualify as administrative expenses, we affirm.

BACKGROUND

TransAmerican[1] filed a voluntary Chapter 11 petition on January 26, 1983. Prior to that date, TransAmerican imported four shipments of atmospheric residual fuel oil and paid duties assessed by Customs for the fuel. After discovering Customs had been overpaid, however, TransAmerican filed four drawback applications between November 25, 1985 and January 6, 1986 requesting refunds totaling $270,980.00.[2] On September 26, 1986, Customs granted or "liquidated" the four drawback applications and refunded TransAmerican $270,993.11 on December 12, 1986.

However, on December 23, 1986, Customs' district director in New Orleans reversed the original decision and "reliquidated" the original payment on the drawback applications under 19 C.F.R. § 173.3(a). The reversal and reliquidation was based on Customs' determination that TransAmerican had not maintained records adequate to justify the drawbacks. *See* 19 C.F.R. § 199.22. TransAmerican was notified of the reliquidation on January 30, 1987.

Meanwhile in TransAmerican's bankruptcy proceedings, notice of

---

[1] TransAmerican was formerly known as GHR Energy Corporation.

[2] The drawback applications were filed pursuant to 19 U.S.C. § 1313(b) and 19 C.F.R. § 191, which authorizes Customs to refund duties paid on goods used in the manufacture of articles that are later exported.

the February 29, 1984 bar date for filing s against TransAmerican's bankruptcy estate was published. On February 22, 1984, Customs filed an unrelated proof of claim seeking payment for $26,458.95 in duties on importation of fuel oil from Spain, which the bankruptcy court allowed.

On September 4, 1987, the bankruptcy court entered an order confirming TransAmerican's Amended Restated Negotiated Chapter 11 Plan ("confirmation order"). The confirmation order provided for consummation of the plan on October 19, 1987. Neither the plan nor the confirmation order made provision for Customs' reliquidated claims against TransAmerican.

On August 5, 1991, Customs filed a motion and request for payment of the reliquidated claims total plus interest, which the bankruptcy court dismissed based on a procedural defect. Customs subsequently filed a second motion and request for payment on August 20, 1991. The second motion was denied by the bankruptcy court on November 22, 1991 on the equitable grounds of the doctrine of laches because Customs inexplicably waited until August 1991 to request payment even though it was aware that TransAmerican had proposed and approved a plan of reorganization.

In response to the bankruptcy court's denial of the second motion, Customs filed a motion to reconsider, arguing that laches does not apply to the United States. The bankruptcy court granted the motion to reconsider, vacated its November 22, 1991 order denying Customs' second motion and request for payment, and granted the motion and request for payment.

3

TransAmerican appealed to the district court. In a memorandum opinion entered August 30, 1995, the district court affirmed the bankruptcy court's final order granting Customs' second motion and request for payment. The district court found that Customs' reliquidated claims, arising post-petition, constituted an administrative expense as defined by 11 U.S.C. § 503 that was disputed because it had not been allowed or disallowed by the confirmation date. The court further found that because a bar date for filing an administrative expense claim is not provided in the Bankruptcy Code, nor was one provided in TransAmerican's confirmed plan of reorganization, the doctrine of laches could not be applied to Customs as a matter of law.

## ANALYSIS

TransAmerican contends that Customs' reliquidated claims are not administrative expenses because they are based upon pre-petition events that triggered the duty tax liability. *See Matter of Midland Industrial Service Corp.*, 35 F.3d 164, 166 (5th Cir. 1994), *cert. denied*, ___U.S.___, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995). TransAmerican argues that Customs' claims arise from the four pre-petition shipments of fuel oil combined with Customs' pre-confirmation decision to reliquidate, not from the administration of the estate. Therefore, because only those expenses of the debtor's estate that arise post-petition are entitled to treatment as administrative expenses, Customs' reliquidated claims must be disallowed.

TransAmerican next contends that payment of Customs'

reliquidated claims do not benefit either the estate or the creditors. TransAmerican argues that because its only benefit flowed from the receipt of fuel oil, which occurred pre-petition, no benefit was conferred on its estate in bankruptcy. TransAmerican also argues that paying these claims will make successful implementation of the reorganization plan more difficult.

TransAmerican's final contention is that even if Customs' reliquidated claims can be treated as administrative expenses, they are barred because Customs acted on it too late. TransAmerican argues that the plan confirmation date was the deadline for Customs to file, and because Customs failed to act until four years later, the claims are now barred. *See NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

Like the district court, we review the bankruptcy court's findings of fact under the clearly erroneous standard, while conclusions of law are subject to *de novo* review. *See Matter of Midland*, 35 F.3d at 165 (citing *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir. 1986)).

Administrative expenses include only those expenses, rendered post-petition, that are "actual" and "necessary" to the preservation of the estate. *See* 11 U.S.C. § 503(b)(1)(A). The words "actual" and "necessary" have been narrowly defined to require that the debt benefit the estate and its creditors. *NL Industries, Inc.*, 940 F.2d at 966 (internal citations omitted).

5

Thus, in order for an expense to qualify as an administrative expense, it must 1) occur post-petition and 2) benefit the estate and its creditors.

We agree with the district court's finding that Customs' reliquidated claims occurred post-petition. The reliquidated claims, although related to the original duty tax imposed when the fuel oil was imported pre-petition, actually arose when TransAmerican filed its drawback applications in 1985 and Customs erroneously refunded TransAmerican in 1986. Thus, this case is distinguishable from the facts in *Matter of Midland*. In that case, the tax, which was incurred pre-petition, was not paid pre-petition. *See Matter of Midland*, 35 F.3d at 165. On the other hand, Customs' original duty tax was satisfied by TransAmerican's pre-petition payment. A new liability arose when TransAmerican received the drawbacks from Customs in 1986. Once Customs' reversed its decision to refund TransAmerican, the reliquidated claims were rendered. We fail to see how a claim could possibly be pre-petition when prior to the bankruptcy petition filing no claim could have been made. Indeed, here the reliquidated claims could not have been made prior to the claim bar date, February 29, 1984.

In addition, Transamerican's contention that Customs' claims do not benefit its estate or its creditors is raised for the first time in this appeal. Our review of the record from the district court reveals that Transamerican's brief on appeal to the district court did not challenge the bankruptcy court's finding that the refunds constituted a necessary cost or expense of preserving the

6

estate. In fact, Customs' brief quotes the bankruptcy court as stating that there was no dispute between the parties regarding this issue. In any event, the record before us is devoid of any contention by Transamerican that the reliquidated claims were not actual or necessary. Therefore, we find that Transamerican may not now raise this new argument before this Court. *See Boddie v. City of Columbus*, 989 F.2d 745, 751 (5th Cir. 1993); *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80, 81 (5th Cir. 1976) ("A party cannot raise a new theory on appeal that was not presented to the court below."). Consequently, we decline to address this new theory in this appeal.

## CONCLUSION

For the reasons articulated above, we AFFIRM the judgment of the district court affirming the bankruptcy court's final order.